UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

_____
                                                    )
**ESAU ELIZALDE-MIRELES,**                          )
**JUAN ANTONIO MARTINEZ-PINEDA,**                   )
**VICTOR MANUEL MARTINEZ-PINEDA,**                  )
**ARCADIO PANTOJA-POSADAS,**                        )
**JOEL POSADAS-RUIZ,**                              )
**JUAN MANUEL RIVERA-RIVERA and**                   )
**JUAN CARLOS RUIZ-VAZQUEZ,**                       )
                                                    )
            *Plaintiffs*,                           )
                                                    )
        **vs.**                                     )
                                                    )
**SWIFT STRAW II, LLC,**                            )
                                                    )
            *Defendant*.                            )
_____ )

## COMPLAINT

## <u>PRELIMINARY STATEMENT</u>

1.   Plaintiffs are migrant agricultural workers recruited by Defendant in Mexico to work gathering, harvesting, and baling pine straw in and near Blountstown, Florida under H-2B guestworker visas. Plaintiffs file this action to secure and vindicate their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801 *et seq*.

2.   Defendant violated the FLSA by failing to pay each Plaintiff at least the required average minimum hourly wage for every compensable hour of labor performed in a workweek. Defendant also failed to pay each Plaintiff at least one and one-half times the regular rate of

compensation for every compensable hour of labor performed in a workweek in excess of 40 hours.

3.   In the course of Plaintiffs' employment, Defendant violated the AWPA's recordkeeping, wage statement, wage payment and working arrangement provisions. Among other things, Defendant failed to pay Plaintiffs the required prevailing wage for their work and attempted to conceal these underpayments by not accurately reporting Plaintiffs' hours of work on the company's payroll records and the wage statements it issued to Plaintiffs with their weekly wages.

4.   Plaintiffs seek their unpaid wages, liquidated damages, actual, statutory damages, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction of this action pursuant to: 28 U.S.C. § 1331 (Federal Question); 29 U.S.C. § 1337 (Interstate Commerce); 29 U.S.C. § 216(b) (FLSA); 29 U.S.C. § 1854(a) (AWPA).

6.   Venue is proper in this district pursuant to 29 U.S.C. § 1854, 28 U.S.C. § 1391, and N.D. Ga. Local Rule 3.1(B)(1)(A) and App. A(I.) because, by virtue of being a Georgia corporation with its principal office at 2255 Cumberland Parkway SE, Atlanta, GA 30339, Defendant Swift Straw II, LLC resides in the Atlanta Division of the Northern District of Georgia.

7.   This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8.   Plaintiffs were admitted into the United States under the auspices of the H-2B program, 8 U.S.C. §§ 1101(a)(15)(H)(ii)(B), 1184(c)(1), and 20 C.F.R. § 655.1 *et seq*. (2008).

9.   At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of 29 U.S.C. § 1802(8)(A) because they were employed in seasonal agricultural employment handling, gathering, harvesting, and baling of pine straw for sale in interstate commerce, while required to be absent overnight from their permanent places of residence in Mexico.

10. Plaintiffs Esau Elizalde Mireles, Juan Antonio Martinez Pineda, Victor Manuel Martinez Pineda, Arcadio Pantoja Posadas, Juan Manuel Rivera Rivera, Juan Carlos Ruiz Vasquez, and Joel Posadas Ruiz are citizens of Mexico who maintain their permanent homes in the state of San Luis Potosi, México.

11. Plaintiffs were recruited in San Luis Potosi, Mexico to come work for Defendant in and near Blountstown, Florida as pine straw gatherers, and traveled from Mexico to the United States in order to do so.

12. Defendant Swift Straw II, LLC ("Swift Straw") is a Georgia corporation with its principal office at 2255 Cumberland Parkway SE, Atlanta, GA 30339. At all times relevant to this action, Swift Straw was registered as a farm labor contractor with the U.S. Department of Labor ("U.S. DOL").

13. Defendant Swift Straw is a farm labor contractor, as defined by 29 U.S.C. § 1802(7), because it recruits, hires, transports, or employs migrant agricultural workers to engage in the harvesting, processing, and packing of an agricultural or horticultural commodity for valuable consideration.

14. Defendant Swift Straw was Plaintiffs' employer in that it had the power to hire and terminate Plaintiffs, suffered or permitted Plaintiffs to work, supervised Plaintiffs' work, and established the piece-rate scheme under which Plaintiffs were paid.

### THE H-2B PROGRAM AND PLAINTIFFS' WORKING ARRANGEMENT

15. The H-2B program is implemented through U.S. DOL regulations. The H-2B program authorizes the lawful admission of temporary, non-immigrant workers to perform labor or services of a temporary nature.

16. As the first step in obtaining permission to import H-2B workers, an employer must file with the U.S. DOL an application on ETA Form 9141 for a prevailing wage determination. Upon receipt of the Form ETA 9141, U.S. DOL makes a prevailing wage determination and returns the endorsed determination to the employer. 20 C.F.R. §§ 655.10(a), (b)(6) (2008).

17. Prior to filing an Application for Temporary Employment Certification, an employer must, in addition to obtaining a prevailing wage determination, submit a "job order" to the State Workforce Agency serving the area of intended employment and attempt to recruit U.S. workers through advertising. 20 C.F.R. § 655.15 (2008). The job order and advertising must "contain terms and conditions of employment which are not less favorable than those to be offered to the H-2B workers," and must contain certain information about the job opportunity. *Id.* §§ 655.15(e)(2) and 655.17.

18. Using ETA Form 9142, an employer must then file an Application for Temporary Employment Certification with the U.S. DOL. 20 C.F.R. § 655.20(a) (2008). This application must include an attestation that the employer will abide by certain conditions relating to wages, compliance with employment-related laws and regulations, availability of full-time employment, worksite placement, and transportation, among others. *Id.* § 655.22.

19. The terms and conditions of the job orders and the temporary employment certification applications, together with the conditions listed at 20 C.F.R. § 655.22 (2008), constituted the "working arrangements," 29 U.S.C. § 1822(c), between Plaintiffs and Defendant.

20. As required by 20 C.F.R. § 655.22(d) (2008), Defendant promised in the temporary labor certification application submitted to the U.S. DOL, and as part of the working arrangements with Plaintiffs, to comply with all applicable Federal employment-related laws, including the overtime provisions of the FLSA.

21. As required by 20 C.F.R. §655.22(e) (2008), and as part of the working arrangements between Defendant and Plaintiffs, Defendant's temporary employment certification application promised that, for the pine straw gathering work performed in and near Blountstown, workers would be paid at least $9.90 per hour (the prevailing wage rate for the industry and area).

22. In the temporary employment certification application, and as part of the working arrangements between Plaintiffs and Defendant, Defendant promised to offer work with terms and conditions not less than the minimum terms and conditions required by 20 C.F.R. § 655, Subpart A (2008).

## STATEMENT OF FACTS

23. Defendant recruited Plaintiffs to work in 2013, harvesting pine straw at locations in or near Jackson County, Florida.

24. Defendant filed an application for a prevailing wage determination for pine straw gatherers in five Florida counties. The U.S. DOL returned the endorsed application to Defendant with a prevailing wage determination of $9.90 for these counties.

25. As part of its filing of the application for temporary labor certification, in or about November, 2012, Defendant filed job order number 9727140 with the Florida Agency for Workforce Innovation, proposing to employ 20 workers in Florida from February 15, 2013 through June 30, 2013, at a wage of  not less than $9.90 per hour.

26. Defendant filed an application for temporary labor certification with the U.S. DOL for 20 workers that contained a certification that the "offered terms and working conditions of the job opportunity . . . are not less than the minimum terms and conditions required by Federal regulation at 20 CFR 655, Subpart A."

27. To fill the manpower requirements of the temporary labor certification application, Defendant recruited Plaintiffs in Ciudad del Maiz, San Luis Potosi, Mexico through their agents Ester Gallegos and Rene Urbano.

28. Plaintiffs traveled from Ciudad del Maiz, San Luis Potosi, Mexico to Monterrey, Mexico for their consular interviews and spent two nights in Monterrey while waiting for their consular interviews.

29. After being issued H-2B visas in Monterrey, Plaintiffs traveled to Marianna, Florida in April 2013 by bus.

30. Beginning in April, 2013, Plaintiffs were employed by Defendant to gather, harvest and bale pine straw in and near Jackson County, Florida.  Ordinarily, they worked six days per week and frequently worked in excess of 40 hours in a workweek.

31. Plaintiffs did not receive payment for all compensable hours worked as required by the FLSA and the working arrangements between them and Defendant.

32. Plaintiffs were paid on a piece-rate basis, such that they were paid according to the number of bales of pine straw they harvested without regard to the number of hours they worked. Defendant failed to supplement Plaintiffs' piece-rate earnings so as to increase them to the prevailing wage of $9.90 per hour, and $14.85 per hour for any hours worked in excess of 40 during a workweek.

33. Defendant failed to make and keep payroll records with respect to Plaintiffs' work as required by the AWPA, 29 U.S.C. §§ 1821(d)(1), and its attendant regulations, 29 C.F.R. § 500.80(a). Defendant maintained payroll records that did not properly record all hours worked in any given week by each Plaintiff. More specifically, Defendant failed to record the actual number of hours worked by each Plaintiff, in an attempt to conceal any minimum and prevailing wage violations.

34. Defendant failed to provide Plaintiffs and their co-workers on each pay day with an itemized wage statement containing the data required by the AWPA, 29 U.S.C. §§ 1821(d)(2), and its implementing regulations, 29 C.F.R. § 500.80(d).  The wages statements issued to Plaintiffs at the end of the workweek by Defendant did not accurately record the actual number of hours worked, and did not include any hours Plaintiffs worked over forty in any given workweek.   The wage statements did not record the basis on which their wages were calculated, or the number of piece-work units earned.

35. In violation of the AWPA, 29 U.S.C. §§ 1822(a), Defendant failed to pay Plaintiffs and their co-workers their wages promptly when due.  In some work weeks, Plaintiffs' weekly piece-rate earnings fell below the applicable federal minimum wage.  In some work weeks, Plaintiffs' weekly piece-rate earnings fell below the $9.90 hourly wage promised as part of the working arrangements between Plaintiffs and Defendant.  In some weeks, Plaintiffs worked more than 40 hours without receiving additional compensation at 150% of their regular hourly rate for the hours worked in excess of 40 during a workweek.

## COUNT I

### (AWPA)

36.     This Count sets forth a claim by Plaintiffs for damages for Defendant's violations of the AWPA and its attendant regulations.

37.     As described in Paragraph 33, Defendant prepared, made, and preserved payroll records that did not accurately record the number of hours that Plaintiffs worked, in violation of 29 U.S.C. § 1821(d)(1).

38.     As described in Paragraph 34, Defendant provided Plaintiffs with wage statements that failed to accurately list the number of hours worked and omitted the number of piece-work units earned, and which failed to disclose the basis on which the wages were paid, in violation of 29 U.S.C. § 1821(d)(2).

39.     As detailed by Paragraphs 31, 32 and 35, Defendant failed to provide Plaintiffs with compensation equivalent to at least the hourly prevailing wage promised under the working arrangement between Plaintiffs and Defendant for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. §§ 1822(a) and (c).  This resulted, in part, from Defendant's practice of paying Plaintiffs based on the quantity of pine straw harvested without regard to the number of hours Plaintiffs worked.

40.     The violations of the AWPA set out in this count were intentional within the meaning of the AWPA.  These violations were the natural consequences of Defendant's conscious and deliberate actions and occurred as part of Defendant's regular business practices.

41.     As a result of the violations of the AWPA as set out in this count, Plaintiffs have suffered damages, including being denied wages due them.

## COUNT II

### (FLSA)

42.　　This Count sets forth a claim by Plaintiffs for damages for Defendant's violations of the minimum wage and overtime provisions of the FLSA.

43.　　As detailed in Paragraph 35, Defendant failed to provide Plaintiffs with compensation equivalent to at least the required minimum hourly wage for every compensable hour of labor performed in a workweek, as required by 29 U.S.C. § 206(a).　 This resulted in part from Defendant's' practice of paying Plaintiffs based only on the quantity of pine straw harvested without regard to the number of hours Plaintiffs worked, even on those occasions when these piece-rate earnings equaled less than $7.25 per hour over the workweek.

44.　　As detailed in Paragraph 35, Defendant failed to pay Plaintiffs at least the required hourly wage of one and one-half times the regular rate of compensation for every compensable hour of labor performed in a workweek in excess of 40 hours, as required by 29 U.S.C. § 207(a).

45.　　As a result of Defendant's violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid minimum wages and overtime compensation and an equal amount as liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court grant them the following relief:

    (a)  Grant judgment against Defendant and in favor of each Plaintiff in the amount of each Plaintiff's damages for Defendant's violations of the AWPA as set out in Count I;

    (b)  Grant judgment against Defendant, for its violations of the FLSA as set out in Count II, and in favor of each Plaintiff in the amount of his respective unpaid minimum and overtime wages to be proven at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b); and

    (c)  Award Plaintiffs cost and fees of this action pursuant to 29 U.S.C. § 216(b);

    (d)  Award Plaintiffs pre- and post-judgment interest as allowed by law;

    (e)  Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted,

*/s/ G. Brian Spears*
G. Brian Spears
G. Brian Spears, P.C.
Georgia Bar Number 670112
1126  Ponce De Leon Avenue N.E.
Atlanta, Georgia  30306
Telephone:      (404) 872-7086
Facsimile:      (404) 892-1128
e-mail:          bspears@brianspearslaw.com

Gregory S. Schell
*Pro Hac Vice pending*
e-mail:       Greg@Floridalegal.Org

Karla Martinez
*Pro Hac Vice pending*
e-mail:       Karla@Floridalegal.Org

Florida Legal Services, Inc.
508 Lucerne Avenue
Lake Worth, Florida 33460-3819
Telephone:    (561) 582-3921
Facsimile:    (561) 582-4884

*Attorneys for Plaintiffs*